## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: WORKWAVE DATA BREACH LITIGATION | Case No.: 3:24-cv-10592-RK-JBD<br><br>Motion Date: June 16, 2025 |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF <u>CLASS ACTION SETTLEMENT</u>

# **TABLE OF CONTENTS**

I.        INTRODUCTION...................................................................................1

II.       PROCEDURAL HISTORY....................................................................2

III.      MATERIAL SETTLEMENT TERMS...................................................4

      A.       The Settlement Class....................................................4

      B.       Settlement Consideration and Benefits........................4

      C.       The Settlement Administrator, Notice, and Claims Process ......5

      D.       Funds Remaining After Distribution ..........................7

      E.       Opt-Out and Objection Procedures..............................7

      F.       Release of Claims........................................................8

      G.      Class Representative Service Awards, Class Counsel Attorneys' Fees, and Reimbursement of Litigation Expenses.....................9

IV.      THE PROPOSED SETLEMENT WARRANTS PRELIMINARY APPROVAL...................................................................................9

      A.       The Settlement Falls Within the "Range of Reason" ................9

          1.      The Proposed Settlement is the Product of Arm's Length Negotiations ...........................................................11

          2.      Plaintiffs' Counsel Engaged in Sufficient Investigation and Discovery to Make an Informed Judgment Concerning the Merits of Plaintiffs' Claims ......................................................12

3.      The Proponents of the Settlement are Highly Experienced Data Breach Class Action Litigators .....................................................13

4.      The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of Further Litigation ....................................13

B.      Certification of the Settlement Class is Appropriate ................15

1.      The Settlement Class Satisfies Rule 23(a) Requirements.........15

2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ....................................................................................19

C.      The Court Should Approve the Proposed Notice Program ......22

D.      A Final Approval Hearing Should be Scheduled ....................24

V.      CONCLUSION ........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alves v. Main*,

    2012 WL 6043272 (D.N.J. Dec. 4, 2012) ............................................................. 11

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591 (1997) ................................................................................... 15, 16, 20

*Barnes v. Am. Tobacco Co.*,

    161 F.3d 127 (3d Cir. 1998) ........................................................................ 17

*Elias v. Ungar's Food Prods., Inc.*,

    252 F.R.D. 233 (D.N.J. 2008) ...................................................................... 21

*Gates v. Rohm & Haas Co.*,

    248 F.R.D. 434 (E.D. Pa. 2008) ................................................................... 10

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,

    525 Fed. Appx. 94 (3d Cir. 2013) ................................................................ 18

*In re Cendant Corp. Litig.*,

    264 F.3d 201 (3d Cir. 2001) ........................................................................ 11

*In re Cmty. Bank of N. Virginia*,

    622 F.3d 275 (3d Cir. 2010) ........................................................................ 18

*In re Flonase Antitrust Litig.*,

    284 F.R.D. 207 (E.D. Pa. 2012) ................................................................... 18

*In re General Motors Corp.*,

    55 F.3d 768 (3d Cir. 1995)............................................................................. 10, 11

*In re IGI Secs. Litig.*,

    122 F.R.D. 451 (D.N.J. 1988)................................................................................. 17

*In re Ins. Brokerage Antitrust Litig.*,

    579 F.3d 241 (3d Cir. 2009)................................................................................... 22

*In re Nat'l Football League Players Concussion Injury Litig.*,

    775 F.3d 570 (3d Cir. 2014)................................................................................... 10

*In re NFL Players Concussion Injury Litig.*,

    821 F.3d 410 (3d Cir. 2016)............................................................................. 16, 20

*In re Processed Egg Prod. Antitrust Litig.*,

    2016 WL 3584632 (E.D. Pa. June 30, 2016)......................................................... 20

*In re Warfarin Sodium Antitrust Litig.*,

    391 F.3d 516 (3d Cir. 2004)..................................................................................... 9

*Ins. Brokerage Antitrust Litig.*,

    297 F.R.D. (alterations in original)................................................................... 17, 19

*Mehling v. New York Life Ins. Co.*,

    246 F.R.D. 467 (E.D. Pa. 2007).............................................................................. 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950).................................................................................................. 23

*Neal v. Casey*,

    43 F.3d 48 (3d Cir. 1994)........................................................................ 18

*Refinishing Paint Antitrust Litig.*, MDL,

    No. 1426, 2004 U.S. Dist. LEXIS 29163 (E.D. Pa. May 11, 2004) .................... 11

*Reyes v. Netdeposit, LLC*,

    802 F.3d 469 (3d Cir. 2015)..................................................................... 16

*Rodriguez v. Nat'l City Bank*,

    726 F.3d (3rd Cir. 2013) ......................................................................... 16

*Smith v. Prof'l Billing & Mgmt. Servs., Inc.*,

    2007 WL 4191749 (D.N.J. Nov. 21, 2007) ........................................... 10

*Stewart v. Abraham*,

    275 F.3d 220 (3d Cir. 2001)..................................................................... 16

*Sullivan v. DB Invs., Inc.*,

    667 F.3d 273 (3d Cir. 2011).............................................................. 16, 22

*Twigg v. Sears, Roebuck & Co.*,

    153 F.3d 1222 (11th Cir. 1998)............................................................... 23

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,

    226 F.R.D. 207 (D.N.J. 2005) ................................................................ 11

**Rules**

Fed. R. Civ. P. 23 ................................................................. passim

## I.    INTRODUCTION

Plaintiffs John Kratochwill and Branden Rogers, on behalf of approximately 99,525 other current and former employees of the service contractors who worked with Defendant WorkWave LLC, d/b/a Team Software ("WorkWave" or "Defendant"), allege that they had their highly sensitive personal information stolen from Defendant's computers by cybercriminals in a data security incident that was discovered on July 26, 2024 (the "Data Incident"). The personal information involved in the Data Incident includes names, Social Security numbers, and driver's license numbers (the "Private Information").

The Parties reached agreement to settle the claims asserted in this lawsuit for a $1,500,000 non-reversionary common fund. The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of any Court-awarded attorneys' fees and costs, Service Awards, and Settlement Administration Costs, Settlement Class Members who submit valid Claims will receive significant consideration, including cash payments and two (2) years of credit monitoring and identity theft protection services. Plaintiffs and Class Counsel settled the Litigation with WorkWave following arm's length negotiations before an experienced data breach mediator, Hon. John W. Thornton (Ret.), of JAMS. Class Counsel have considerable experience in data breach litigation and are keenly aware of the strengths and weaknesses of litigating the case. Notwithstanding their

confidence in the merits of their claims, Plaintiffs recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and WorkWave's various defenses as to standing, liability, and other affirmative defenses. The Settlement will also avoid further delay in providing relief to the Settlement Class and expensive and protracted litigation with uncertain results. In exchange for the above-referenced consideration, Plaintiffs and all Settlement Class Members will release WorkWave and the other Released Parties from the claims in the Litigation.

## II.    PROCEDURAL HISTORY

On July 26, 2024, WorkWave detected suspicious activity on its applications. Based on a subsequent forensic investigation, WorkWave determined that cybercriminals gained access to its data files. The investigation further determined that cybercriminals potentially accessed files containing the personal information of approximately 99,525 individuals (the "Data Security Incident").

In October and November 2024, WorkWave sent notice to the Plaintiffs and the Settlement Class (as defined below) notifying them of an intrusion in their network that WorkWave believed may have affected Plaintiffs' Private Information. Both Plaintiffs subsequently filed separate lawsuits before this Court. On January 27, 2025, after having filed separate actions, the Named Plaintiffs, on behalf of themselves and all others similarly situated, filed their Consolidated Class Action

Complaint (D.E. 14). The Plaintiffs asserted claims against Defendant for (1) Negligence and (2) Breach of Third-Party Beneficiary Contract. WorkWave denies all the claims and contentions of Plaintiffs.

Shortly thereafter, the Parties began discussing settlement and scheduled a mediation with Judge John Thornton, a JAMS mediator and retired judge in Florida with experience mediating cybersecurity class action cases. In advance of the mediation, Plaintiffs propounded informal discovery requests on Defendant to which Defendant responded by providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of people potentially impacted, and the specific type of information at issue. The Parties also exchanged mediation statements in advance of the mediation. On March 25, 2025, counsel for the Parties participated in a full-day mediation session overseen by Judge Thornton. At the close of the mediation, Judge Thornton submitted a mediator's proposal that resulted in an agreement between the Parties. The terms of the mediator's proposal, and additional terms agreed to by the Parties, are memorialized in the Settlement Agreement ("SA"), attached as Exhibit 1 to the Joint Declaration of Counsel ("Joint Dec."), filed contemporaneously herewith. The Settlement Agreement was negotiated in good-faith and at arm's length by capable and experienced counsel with full knowledge of the law, facts, and the inherent risks of litigation.

3

Plaintiffs now bring this Settlement before the Court for preliminary approval. Defendant does not object to the relief sought in this motion.

## III.   MATERIAL SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement:

### A. The Settlement Class

The proposed Settlement establishes the following Settlement Class:

> all individuals within the United States of America whose PII was exposed to unauthorized third parties as a result of Defendant's Data Security Incident that occurred on or around July 2024, including all individuals who were sent a letter notifying them of the Data Security Incident.

SA ¶ 1.34. The Settlement Class contains approximately 99,525 individuals. Excluded from the Settlement Class are the Court, the officers and directors of Defendant, persons who have been separately represented by an attorney and entered into a separate settlement agreement in connection with the Data Security Incident, and persons who timely and validly request exclusion from the Settlement Class. *Id.*

### B. Settlement Consideration and Benefits

Pursuant to the Settlement, WorkWave has agreed to create a non-reversionary cash Settlement Fund in the amount of $1,500,000.00 for the benefit of the Settlement Class. The Settlement Fund will be used to pay all Settlement Claims, Settlement Administration Costs, any Service Awards to Class Representatives awarded by the Court, and any attorneys' fees and costs awarded by the Court to

Class Counsel. Settlement Class Members who submit a valid and timely Claim Form may submit claims for one or more of the following: (1) a cash payment for reimbursement of documented losses up to $5,000.00; (2) two (3) years of identity theft protection and credit monitoring, including identity theft insurance of $1,000,000.00, and/or; 3) a *pro rata* cash payment of the Net Settlement Fund, currently estimated to be not less than $100 per valid claim. SA ¶ 59(a)-(c).

In addition, WorkWave has given assurances that it either has undertaken or will undertake reasonable steps to further secure its systems and environments. SA ¶ 59(d). The Settlement requires that WorkWave confirm its Business Practice Changes by way of a confidential declaration. *Id*. All costs associated with the implementation of these steps have been or will be borne by WorkWave separate and apart from the Settlement Fund, and none will be paid for by the Plaintiffs. *Id.*

## C. The Settlement Administrator, Notice, and Claims Process

The Parties have agreed to utilize Atticus Administration, LLC ("Atticus") as the third-party Settlement Administrator to assist with the dissemination of Notice and for the implementation of the claims process. *See* Joint Dec., ¶ 48. Atticus is a highly experienced well-known class action settlement administration firm. *Id*.

Notice shall be sent thirty (30) days after the entry of a Preliminary Approval Order, with the Claims Deadline to take place ninety (90) days after the Notice Deadline. SA ¶¶ 5, 24. WorkWave will provide the Settlement Administrator with

the full names and last known addresses for Settlement Class members within fourteen (14) days after the preliminary approval order. SA, ¶ 8.

Notice shall be given via the following forms, subject to this Court's approval: (1) Short Form Notice, in double-side postcard with claim form tear-off, to be sent via first-class U.S. mail, postage prepaid, to all those Settlement Class members for which WorkWave provides a postal address (SA ¶ 76); (2) the Long Form Notice, which will be made available to Settlement Class members on the Settlement Website (*id.*, ¶ 43); and (3) an optional Reminder Notice to be sent to Settlement Class members at Class Counsel's request (*id.*, ¶ 34).

In addition, the Settlement Administrator will establish a toll-free number to answer frequently asked questions, as well as a Settlement Website for Settlement Class members to submit Claim Forms and/or to view other important information and documents, including the Long Form Notice, Consolidated Complaint, Settlement Agreement, and Preliminary Approval Order. *Id.*, ¶¶ 43, 79(e).

The Notice Program is designed to provide members of the Settlement Class with important Settlement information and their rights thereunder, including a description of the material Settlement terms; how to access and submit a Claim Form; a date by which Settlement Class members may opt-out of the Settlement; a date by which Settlement Class members may object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval

Hearing date; and information regarding the Settlement Website where Settlement Class members may access the Settlement Agreement and other important documents. Complete opt-out and objection requirements are listed in the Settlement Agreement, as well as in the Long Form Notice. *Id*., ¶¶ 77-78.

### D. Funds Remaining After Distribution

To the extent there are funds remaining in the Settlement Fund after accounting for the total cost of all valid and timely Claims, including all *pro rata* payments (which are designed to "sweep" out all remaining funds to the Settlement Class Members making valid claims), the remaining amount in the Settlement Fund shall be treated as residual funds and thereafter distributed to the *cy pres* recipient National Cybersecurity Alliance, a non-profit third-party organization that promotes cybersecurity awareness and education. SA ¶ 21.

### E. Opt-Out and Objection Procedures

In accordance with the opt-out procedures detailed in the Long Form Notice and the Settlement Agreement, Settlement Class members who do not wish to participate in the Settlement may opt-out by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline. SA ¶ 77. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does

not wish to participate in the Settlement at the top of the communication. *Id.*

Settlement Class Members who wish to object to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards must do by the Objection Deadline (sixty (60) days after the Notice Date). The Settlement Agreement and the Long Form Notice set forth all objection requirements and instruct that objectors must send written objections to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline. SA ¶ 78. The written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id*.

### F. Release of Claims

Plaintiffs and Settlement Class members who do not timely and validly opt out of the Settlement will be bound by the terms of the Settlement, including the release and discharge of the Released Claims against the Released Parties. SA, ¶ 33.

### G. Class Representative Service Awards, Class Counsel Attorneys' Fees, and Reimbursement of Litigation Expenses

In recognition of the Class Representatives' time and effort expended in pursuing the Litigation and in fulfilling their obligations and responsibilities as Class Representatives, Class Counsel will ask the Court to approve a Service Award of up to $2,500.00 for each Class Representative, payable from the Settlement Fund. SA, ¶ 98.

In addition, Class Counsel will request attorney's fees not to exceed one-third of the Settlement Fund (*i.e.,* $500,000.00), and reimbursement of litigation expenses not to exceed $25,000.00. *Id.*, ¶ 100. The Notices will inform the Settlement Class that Class Counsel will be seeking such fees and costs. Notably, the discussion of attorneys' fees and costs and Service Awards did not take place until after the Parties agreed to all material Settlement terms. *See* SA Recitals ¶ F.

## IV. THE PROPOSED SETLEMENT WARRANTS PRELIMINARY APPROVAL

### A. The Settlement Falls Within the "Range of Reason"

The Third Circuit has stated that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). Where, as here, the Parties propose to resolve the Litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). If the preliminary evaluation of the

proposed settlement does not disclose grounds to doubt its fairness or present other obvious deficiencies, and appears to fall within the range of possible approval, the court should grant preliminary approval and direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. *See In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581-83 (3d Cir. 2014) (citing Man. for Comp. Lit., 4ᵀᴴ ("MCL") § 21.632 (4th ed. 2004)).

A court's review for preliminary approval is less stringent than for final approval. *See Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-cv-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also In re General Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness"); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008) ("At the preliminary approval stage, however, the Court need not address [the Girsh] factors, as the standard for preliminary approval is far less demanding.").

Courts have applied an initial presumption of fairness where: (1) a proposed settlement was negotiated at arm's length; (2) there was sufficient discovery; and (3)

10

counsel is experienced in similar litigation. *In re General Motors Corp.*, 55 F.3d at 786; *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); *Varacallo v. Massachusetts Mut. Life Ins. Co*., 226 F.R.D. 207, 235 (D.N.J. 2005). As discussed below, each of these factors supports the preliminary approval of this Settlement and, as such, Plaintiffs respectfully request the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement.

### 1. The Proposed Settlement is the Product of Arm's Length Negotiations

District courts give great weight to the opinion and judgment of experienced counsel who conducted arm's-length negotiations. Settlements negotiated by experienced counsel that result from arm's length negotiations are entitled to deference. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *6-7 (E.D. Pa. May 11, 2004). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

Here, the parties reached an agreement on all material terms after an all-day mediation before experienced data breach mediator, Judge Thornton. Joint Dec., ¶ 28. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Judge Thornton supports the conclusion that the Settlement was achieved free of collusion, and merits preliminary approval. *See Alves v. Main*, No. 01-cv-789 (DMC), 2012 WL 6043272, at *22 (D.N.J. Dec. 4,

2012) (internal quotations omitted) ("The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties."). Because all negotiations regarding settlement in the Litigation have been conducted at arm's length, in good faith, and absolutely free of any collusion (Joint Dec., ¶ 28), this factor is satisfied in favor of the Court granting preliminary approval of the Settlement.

### 2. *Plaintiffs' Counsel Engaged in Sufficient Investigation and Discovery to Make an Informed Judgment Concerning the Merits of Plaintiffs' Claims*

Plaintiffs' counsel have vigorously represented the Settlement Class and will continue to do so after Preliminary Approval and Final Approval. *See* Joint Dec., ¶ 46. To date, proposed Class Counsel have: (i) conducted a thorough pre-suit investigation that resulted in the preparation of multiple detailed complaints; (ii) gathered Plaintiffs' documents and relevant information relating to the Incident; (iii) requested and reviewed relevant information via informal discovery for mediation; (iv) prepared a detailed mediation statement; (v) participated in mediation and settlement discussions, achieving a very favorable Settlement for the Settlement Class; and (vi) negotiated a comprehensive Agreement that includes a robust Notice Program, well-crafted Notices and Claim Form, and an easy to understand Claims Process. Joint Dec., ¶ 47. Additionally, Class Counsel have no conflicts of interest with the Settlement Class. Therefore, this factor supports preliminary approval.

### 3.  *The Proponents of the Settlement are Highly Experienced Data Breach Class Action Litigators*

Here, the Settlement is the result of the Parties' arm's length negotiations by Class Counsel and WorkWave's counsel, who are all attorneys who are familiar with class action litigation. Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of class actions, including data breach cases; and knowledgeable of the legal and factual issues at the center of the Litigation. Joint Dec., ¶ 45. This experience proved beneficial to Plaintiffs and the Settlement Class during negotiations. *Id.* Class Counsel conducted informal discovery and exchanged mediation statements prior to the mediation that enabled them to prepare for well-informed negotiations overseen by Judge Thornton, culminating in the Settlement. *Id.*, ¶ 17-18. Thus, this factor is satisfied.

### 4.  *The Settlement Amount is Fair, Reasonable, and Adequate in Light of the Risks of Further Litigation*

A preliminary review of the fairness and adequacy factors demonstrates that the Settlement warrants preliminary approval under Rule 23(e)(2). The Settlement was reached in the absence of collusion, and is the product of good faith, informed, and arm's length negotiations by competent counsel with the assistance of Judge Thornton at mediation. Joint Dec., ¶ 28.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Class

Counsel believe the claims asserted in the Litigation are meritorious and that Plaintiffs would prevail if the Litigation proceeded to trial. Joint Dec., ¶ 31. WorkWave denies liability, believes it acted in good faith and in compliance with the law, and that it would prevail in opposing class certification and on the merits at trial. *Id.*

Class Counsel are confident in the strength of Plaintiffs' claims in the Litigation. Joint Dec., ¶ 32. However, they are also pragmatic about the risks and challenges they face. *Id.* There are uncertainties in litigating the cases through class certification, summary judgment, and trial. *Id.* Class Counsel are also aware of the risks inherent from any appeal and subsequent proceedings following a successful trial verdict. *Id.* Under the circumstances, Class Counsel determined the Settlement outweighs the risks of continued litigation. *Id.* And even if Plaintiffs and the Settlement Class ultimately prevailed at trial, recovery could be delayed for years by an appeal. This Settlement provides substantial relief to Settlement Class Members without further delay and avoids the risk of an adverse judgment at trial or on appeal. Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery, and the Settlement benefits outweigh the risks and uncertainties of continued litigation, including the risks, time, and expenses associated with completing a trial and any appellate review. *Id.*, ¶ 38.

14

## B. Certification of the Settlement Class is Appropriate

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts have long acknowledged the propriety of a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See id*. at 593. As demonstrated below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3). Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to opt-out, of their right to object and be heard on its fairness, and of the date, time, and place of the Final Approval Hearing. *See* MCL §§ 21.632, 21.633 (2004). For the reasons set forth below, certification is appropriate and the Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate, and reasonable.

### 1. The Settlement Class Satisfies Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613. As discussed below, the proposed settlement class meets each of these requirements.

*Numerosity.* Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Forty class members is generally considered sufficient to satisfy this element. *See Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001). Here the numerosity requirement is plainly satisfied as there are approximately 99,525 Settlement Class members.

*Commonality.* The second prong of Rule 23(a)—commonality—requires "consideration of whether there are 'questions of law or fact common to the class[.]'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (citing Fed. R. Civ. P. 23(a)(2)). The commonality requirement is satisfied if the claims have at least one significant issue common to the class. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427 (3d Cir. 2016). The court's focus must be "on whether the defendant's conduct [is] common as to all class members[.]" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). And that "bar is not a high one." *Reyes*, 802 F.3d at 486 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d at 382 (3rd Cir. 2013)).

In this case, there are numerous common questions of law and fact for purposes of settlement centering on data security practices that potentially led to the

Data Incident, including but not limited to, potential disclosure of Plaintiffs' and Class Members' Private Information; security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Incident; compliance with applicable laws, regulations, and industry standards; and the duty owed to Plaintiffs and Class Members. These questions are common to the Settlement Class and commonality is therefore satisfied. Joint Dec., ¶ 41.

*Typicality.* Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998). "As with numerosity, the Third Circuit has 'set a low threshold' for satisfying typicality, holding that '[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established….'" *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 149 (alterations in original) (citation omitted). Moreover, the typicality analysis focuses on the conduct of the defendants, not that of the class representatives. *In re IGI Secs. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988). Thus, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the

class members, and if it is based on the same legal theory." *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (internal citation omitted).

Here, the Plaintiffs' and Class Members' claims all arise from the same Incident and same alleged course of conduct by Defendant. Plaintiffs allege that Defendant's conduct was uniform as to each Class Member, and all members of the proposed class seek to recover for the resulting injury based on the same legal theories. *See, e.g., In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 218 (E.D. Pa. 2012) (typicality requirement satisfied where plaintiffs and all members of the proposed class seek to recover for uniform conduct based upon the same legal theories). The typicality requirement is therefore satisfied.

***Adequacy.*** The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining the adequacy of representation, the court should "'evaluate [both] the named plaintiffs' and … counsel's ability to fairly and adequately represent class interests.'" *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94, 100-101 (3d Cir. 2013) (alterations in original; citation omitted)). In doing so, "the district court ensures that no conflict of interest exists between the named plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named plaintiffs have the ability and incentive to vigorously represent the interests of the class." *Id.* at 101 (citing *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291

(3d Cir. 2010)).

Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Joint Dec., ¶ 42. Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel. *Id.*, ¶ 45. Class Counsel are leaders in the data breach class action field and have extensive experience prosecuting complex class actions, which helped them to negotiate an outstanding Settlement for the Class in this case as a result of weeks of negotiations, pre-mediation discovery, and an intensive, successful full-day mediation session. *See Id.*, ¶¶ 8-9, 45. Class Counsel has devoted substantial time and resources to the Litigation and resulting Settlement and will continue to do so. *Id.*, ¶ 46. Therefore, Plaintiffs and Class Counsel satisfy Rule 23(a)(4).

### 2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Plaintiffs also seek certification of the Settlement Class pursuant to Rule 23(b)(3). A class action seeking an award of damages is appropriate under Rule 23(b)(3) if the court finds both that "'the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" *In re Ins. Brokerage Antitrust Litig.*,

297 F.R.D. 136, 150 (D.N.J. 2013) (quoting FED. R. CIV. P. 23(b)(3)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618.

### a. Common legal and factual questions predominate individual ones

Predominance is generally more demanding than commonality; however, the Third Circuit is "more inclined to find the predominance test met in the settlement context." *NFL Players*, 821 F.3d at 434 (citations omitted). This is because, "for purposes of inquiring into the predominance of questions of law and fact relevant to a settlement class, manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *In re Processed Egg Prod. Antitrust Litig.*, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016).

Here, there are several common questions of law and fact that substantially outweigh any questions that may affect individual Settlement Class Members. For example, each Settlement Class member's relationship with WorkWave is the same or substantially similar in all relevant respects to other Class Members—the Plaintiffs and each Class Member are individuals who were sent notice of the Data Incident by WorkWave in October and November 2024. Here also, the same alleged course of conduct by Defendant forms the basis of all Settlement Class Members' claims. As set forth above, for settlement purposes, there are numerous common

issues relating to Defendant's potential liability at the core of the Litigation, which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### b. **A class action is superior to other methods of adjudication**

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). The superiority requirement is easily satisfied. Indeed, courts in the Third Circuit have concluded that the class action device is usually the superior method by which to redress injuries to a large number of individuals in light of, *e.g.*, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations. *See, e.g., Elias v. Ungar's Food Prods., Inc.,* 252 F.R.D. 233, 252 (D.N.J. 2008) (finding superiority requirement satisfied where "each individual purchaser would have little interest in pursuing separate claims as the recovery sought by each would not be sufficiently large to render separate cases economically feasible.") (internal citations omitted).

The Settlement Agreement and Notice Program provide members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and there are well-defined administrative procedures to assure due process. This includes the right of any Settlement Class Member dissatisfied with the Settlement to object to it, or to exclude themselves. The Settlement would also relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendant. And because the parties seek to resolve the Litigation through a settlement, any manageability issues that could have arisen at trial are marginalized. *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 302-303 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 269 (3d Cir. 2009). Finally, the complexity of the claims asserted against WorkWave and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class members would be able to obtain relief without class certification.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

**C. The Court Should Approve the Proposed Notice Program**

Fed. R. Civ. P. 23(e)(1)(B) states: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes

of judgment on the proposal." The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* MCL, § 21.312 (listing relevant information).

The proposed Notice detailed above satisfies these criteria. Through direct notice by U.S. Mail, Settlement Class members of the Settlement's substantive terms. Joint Dec., ¶ 51. The Notices will advise Settlement Class members of their options for remaining part of the Settlement Class or for opting out of the Settlement, submitting Claim Forms, objecting to the Settlement and/or the Application for Attorneys' Fees, Costs, and Service Awards, and will instruct Settlement Class members on how to obtain additional information about the Settlement. *Id.* The Notice Program is designed to directly reach a high percentage of Settlement Class members with Postcard Notice. *Id.* Therefore, the Court should approve the Notice Program and the form and content of the Notices and Claim Form. SA, Exs. A-C.

### D. A Final Approval Hearing Should be Scheduled

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement and offer argument in support of final approval. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a final order and judgment under Rule 23(e); and whether to approve Class Counsel's Fee and Costs Application and request for Service Awards for Plaintiffs. Thus, Plaintiffs request that the Court schedule the Final Approval Hearing for the earliest date convenient for the Court that is consistent with the schedule below. Plaintiffs propose the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Notice Commencement Date | 30 days after Preliminary Approval Order |
|---|---|
| Deadline to file Motion for Attorneys' Fees, Costs, and Service Award | 14 days prior to opt-out and objection deadlines |
| Deadline to file Motion for Final Approval | 14 days prior to Final Approval Hearing date |
| Opt-Out Deadline | 60 days after Notice Date |

| Objection Deadline | 60 days after Notice Date |
|---|---|
| Claims Deadline | 90 days after Notice Date |
| Final Approval Hearing | _____ \_\_, 2025, at \_\_\_\_ am/pm (more than 100 days after Preliminary Approval) |

## V.    CONCLUSION

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval of the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(3) and (e); (3) approve the Notice Program and the form of the Notices; (4) approve the Claim Form and Claim process; (5) approve the opt-out and objection procedures set forth in the Notice Program; (6) appoint Plaintiffs as Class Representatives; (7) appoint A. Brooke Murphy and David K. Lietz as Class Counsel; (8) appoint Atticus as Claims Administrator; and (9) schedule a Final Approval Hearing.

DATED:    May 16, 2025                Respectfully submitted,

/s/ David J. DiSabato
David J. DiSabato
**SIRI & GLIMSTAD LLP**
745 Fifth Ave Suite 500
New York, NY 10151
T: (973) 273-3570
E: ddisabato@sirillp.com

A. Brooke Murphy
(admitted *pro hac vice*)
**MURPHY LAW FIRM**

4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

David K. Lietz
(admitted *Pro Hac Vice)*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

*Counsel for Plaintiffs and the Proposed
Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2025 a copy of the foregoing document was

electronically filed with the Clerk of Court using the CM/ECF system.

/s/ *David J. DiSabato*
David J. DiSabato